**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

The Trustees of the Minnesota State Basic
Building Trades Fringe Benefit Fund,

Plaintiffs,

v.

GibSons Construction Enterprises, Inc.,
a Minnesota corporation, and Elaine Gibson,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-2170 ADM/AJB

---

Stephen Kelly, Esq., Rosene, Haugrud & Staab, Chartered, St. Paul, MN, appeared for and on behalf of Plaintiffs.

Ruth S. Marcott, Esq., Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

On February 5, 2002, the Motions for Summary Judgment of Plaintiffs Trustees of the Minnesota State Basic Building Trades Fringe Benefit Fund ("Plaintiffs") [Docket No. 11] and Defendants GibSons Construction Enterprises, Inc., and Elaine Gibson ("Gibson") (collectively, "Defendants") [Docket No. 14], were argued before the undersigned United States District Judge. For the reasons set forth below, Plaintiffs' Summary Judgment Motion is granted and Defendants' Motion is denied.

## II. BACKGROUND

The Minnesota State Basic Building Trades Fringe Benefit Fund (the "Fund") is a multi-employer fringe benefit plan established to provide pension, health and welfare, and other benefits to employees doing work in the construction trades, pursuant to Collective Bargaining

FILED 5.6.03
RICHARD D SLETTEN, CLERK
JUDGMENT ENTD 5.6.03
DEPUTY CLERK ______

Agreements between the employers and two labor unions: Bricklayers and Allied Craftworkers Union Local No. 1 of Minnesota ("Bricklayers Union") and Minnesota Cement Masons, Plasterers and Shophands Local 633 ("Cement Union"). Gibson is an owner, member of the board of directors, officer and stockholder of GibSons Construction Enterprises, Inc. ("GibSons"), and was President of the company.

On June 10, 1999, Gibson signed an Acceptance Agreement ("Cement Agreement") which bound GibSons to the Duluth Area Agreement Between the Twin Ports Contractors Association and the Cement Union ("1999-04 Cement CBA"). Gibson Dep. Exs. 6, 7. The Cement Agreement states:

> This Agreement is binding personally and individually upon each of the following: The union, the undersigned Employer, and each of the individual owners, partners, and stockholders of the Employer. The undersigned signatories each certify that such signatories have authority to enter into this Agreement and to bind the persons and parties described in this paragraph.

Cement Agreement (Gibson Dep. Ex. 6).

On August 27, 2001, Gibson signed an Agreement ("Brick Agreement") which bound GibSons to the Statewide Agreement between several chapters of the Bricklayers Union, Divisions of the Associated General Contractors of Minnesota, the Minnesota Concrete and Masonry Contractors Association, and Independent Employers ("2001-03 Brick CBA"). Gibson Dep. Exs. 4, 5. The Brick Agreement states:

> THIS AGREEMENT IS BINDING PERSONALLY AND INDIVIDUALLY UPON EACH OF THE FOLLOWING: THE UNION, THE UNDERSIGNED EMPLOYER, AND EACH OF THE INDIVIDUALS, PARTNERS, OFFICERS, OR STOCKHOLDERS OF THE EMPLOYER OF THE UNDERSIGNED. SIGNATORS EACH CERTIFY THAT SUCH SIGNATORS HAVE AUTHORITY TO ENTER INTO THIS AGREEMENT AND TO BIND THE PERSONS AND PARTIES DESCRIBED IN THIS PARAGRAPH.

Brick Agreement (Gibson Dep. Ex. 4).

The 1999-04 Cement CBA and the 2001-03 Brick CBA require monthly submission to Plaintiffs' Third-Party Administrator ("TPA") of fringe benefit contribution Report Forms and corresponding payments for each hour of work performed by an individual in covered employment. Gibson Dep. Ex 5., Art. 23 and Ex. 7, Art. 21. Starting in February, 2001, Defendants failed to submit fringe benefit contribution Report Forms and contributions. Id. Ex. 3. A Compliance Audit was completed on August 12, 2002, showing a total amount due of $87,374.47 for contributions and $8,737.45 for liquidated damages to the Bricklayers, and $3,574.37 for contributions and $357.44 for liquidated damages to the Cement Masons. Id. Exs. 2, 3. GibSons, the corporation, concedes liability for these delinquent payments. Def. Mem. in Supp. at 1, 5. The parties dispute whether or not Elaine Gibson is personally liable for the delinquent payments.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not

"rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

The contested issue here is whether or not Gibson is personally liable under the Cement Agreement and Brick Agreement for the delinquent contribution payments owed to Plaintiffs. Gibson argues she is not personally liable for having signed the Agreements because there was no separate signature line for a personal guarantee, as there had been on other personal guarantees she previously signed as security for corporate indebtedness. Def. Mem. in Supp. at 2. While "Congress did not intend corporate officers to be personally liable under [the Employee Retirement Income Security Act's ("ERISA")] definitions of 'employer' and 'person,' such officers [can] be personally liable under ERISA if the terms of the plan impose[] such liability on them." Rockney v. Blohorn, 877 F.2d 637, 643 (8th Cir. 1989) (finding no personal liability because there was "no evidence of any written or oral agreements"). By signing a CBA, an employer can become "contractually obligated, wholly independently of ERISA, to make pension contributions." Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund and Annuity Fund v. Lollo, 35 F.3d 29, 37 (2nd Cir. 1994). Thus, a corporate officer can be held personally liable where the officer is a signatory to the agreement or has expressly accepted liability with an endorsement, guarantee or express undertaking. Rockney, 877 F.2d at 643.

Contractual liability is determined by state law. Id. Under Minnesota contract law, "a corporate officer may personally guarantee the obligations of a corporation." Universal Lending Corp. v. Wirth Cos., Inc., 392 N.W.2d 322, 325 (Minn. Ct. App. 1986). Extrinsic evidence may be used to determine whether or not the parties understood the contract to bind the officer personally. Hubbs v. Leach, 355 N.W.2d 470, 473 (Minn. Ct. App. 1985).

Here, Gibson knowingly signed both the Cement Agreement and the Brick Agreement under clear, unequivocal language stating that the agreements were binding "personally and individually." Gibson Exs. 4, 6. The presence of one rather than two signature blocks does not negate the clear language of the agreements. No authority suggests a requirement of two separate signature blocks in order to impose personal liability on a signatory where the express language of a contract clearly states the terms of liability.

Accordingly, Gibson is personally liable as a surety for the delinquent contributions under the terms of the Cement Agreement and Brick Agreement. However, Gibson is not liable for attorneys' fees, interest and liquidated damages under ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2). Miami Valley Carpenters Dist. Council Health and Welfare Fund v. U.S. Fidelity and Guar. Co., 590 F. Supp. 61, 66 (S.D. Ohio 1984) (holding that ERISA § 515, 29 U.S.C § 1145, which triggers availability of attorneys' fees, interest and liquidated damages under § 502(g)(2), does not apply to obligations derived from surety bonds for a surety exercising no control over the employees benefit plan). Gibson's surety obligations here function similarly to the obligations of the Defendant in Miami Valley, thus § 515 does not apply to Gibson.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 11] is **GRANTED**, and
2. Defendants' Motion for Summary Judgment [Docket No. 14] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/ Ann D. Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: May 6, 2003